**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**HASSAN REID**,

        Plaintiff,

v.

**MATHEW FINN,** *et. al.*,

        Defendants.

Civil Action No. 20-7425 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon separate Motions for Summary Judgment filed by Defendant Mathew Finn ("Finn") (Finn MSJ, ECF No. 130), Defendant Jeffrey Boley ("Boley") (Boley MSJ, ECF No. 131), Defendant Daniel Marcinko ("Marcinko") (Marcinko MSJ, ECF No. 132), and Defendant Eugene Marra ("Marra", with Finn, Boley, and Marcinko, "Defendants") (Marra MSJ, ECF No. 133). Plaintiff Hassan Reid ("Plaintiff") filed a single Opposition ("Opp.", ECF No. 134), to which Defendants individually replied (ECF Nos. 139, 140, 142, and 143).

    The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** the Defendants' Motions.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    It is undisputed that on March 11, 2020, Plaintiff was arrested by the Perth Amboy Police Department under Warrant No. 2020-000292 and Warrant No. 2020-000293. (Finn Ex. B at 12–

13.)[1] Plaintiff was then transported to the Raritan Bay Medical Center ("RMBC") for evaluation, where he was diagnosed with high blood pressure, a sprained hand, and a strain of the lumbar region. (Finn Ex. C.) RMBC provided Plaintiff with medication to treat those diagnoses. (*Id.*) The medical center also physically cleared Plaintiff for incarceration. (*Id.*)

After Plaintiff arrived at the Middlesex County Adult Correction Center ("MCACC") on March 12, 2020, he underwent an intake screening by NaphCare medical staff. (Finn Ex. D.) Records from that screening noted Plaintiff's prior treatment from the medical center and the medications RMBC gave him. (*Id*. at 6.)

At that point, the parties' stories begin to diverge. According to Plaintiff, while he was still in the intake unit[2], he approached the officer desk because he felt his blood pressure rising and was concerned he could have a stroke. (Plaintiff Dep., Finn Ex. E at 29:19–22, 61:9–11.) The officer at the desk allegedly refused to provide him with medical attention and told Plaintiff to return to his cell. (*Id.* at 30:14–20.) Plaintiff reiterated to the officer that he needed medical attention and was unsure if he needed more medication for his high blood pressure. (*Id.*) At that point, additional officers came into the intake unit and surrounded Plaintiff. (*Id.* 30:21–21.) Those officers, according to Plaintiff, grabbed him, twisted his wrist, and brought him to the ground. (*Id.* at 30:21–31:4.) As Plaintiff was on the ground, the officers maced him, handcuffed him, and picked him back up. (*Id*. at 31:1–8.) The officers then placed a mask on Plaintiff's face and walked him through the intake unit and to the SNU.[3] (*Id*. at 31:6–22.) While the officers were walking Plaintiff to the SNU, they allegedly rammed his head into a wall multiple times. (*Id.* at

---

[1] All references to "Finn Ex." refer to the exhibits accompanying Finn's Motion for Summary Judgment. (ECF Nos. 130-4 to 130-28.) References to "Boley Ex." refer to the exhibits accompanying Boley's Motion for Summary Judgment. (ECF Nos. 132-7 to 132-30.)
[2] The intake unit is also referred to as the "November Unit."
[3] Plaintiff described the SNU as "a special facility that's connected next door to intake." (Plaintiff Dep. at 32:19–24.)

31:13–19, 77:15–19.) Once the officers had Plaintiff in the SNU, they allegedly brought him to a back room, where Marcinko called him a racial slur and, along with the other Defendants[4], started punching him in the stomach. (*Id*. at 31:21–31:9, 79:2–12.) Plaintiff also claims that Defendants, instead of taking off the mask and pouring water over his eyes, poured the water directly over his mask and waterboarded him. (*Id.* at 31:25–32:3, 63:7–10.)

Unsurprisingly, Defendants offer a different version of events. During the second shift on March 12, Marcinko, Finn, and Boley were assigned to Hallway Area No. 1, while Marra was assigned to Hallway Area No. 2. (Boley Ex. F.) The duties of hallway officers included responding to inmate altercations, officer assistance calls, and medical emergencies. (Marcinko Dep., Boley Ex. G at 15:9–23.) That night, Officer Varga began securing the intake unit for lockdown when Plaintiff refused to enter his cell. (Boley Ex. I.) Varga radioed Boley to report the refusal, and the hallway officers, including Finn and Marcinko, responded. (Marcinko Dep. at 211–2; Finn Dep., Boley Ex. H at 25:8–27:3; Boley Ex. I.) As Finn entered the unit, Varga observed Plaintiff shove him. (Boley Ex. I.) Varga then activated his officer assistance button. (*Id*.)

According to Finn's report, he entered the unit, identified Plaintiff, and ordered him to place his hands behind his back. (Boley Ex. L.) Plaintiff refused and became agitated. (*Id.*) When Finn attempted to secure Plaintiff's right arm, Plaintiff allegedly tried to pull away, raised his left fist, and took a defensive stance. (*Id*.) Plaintiff then stepped toward Finn, who struck Plaintiff once before bringing him to the ground. (*Id*.) While on the floor, Plaintiff continued to resist by

---

[4] The level of involvement by each Defendant is not clear from Plaintiff's deposition testimony. However, it is clear from Defendants' reports that they would have been present during this alleged incident. Indeed, each of them wrote in a report that they transported Plaintiff to the medical exam room following the incident in the intake unit. (Boley Exs. J, L, M, O.) Plaintiff's deposition testimony further suggests that each of them was involved to some extent. (Plaintiff Dep. at 31:13–32:16.)

3

tucking his arms beneath his torso. (*Id*.) Finn deployed a short burst of oleoresin capsicum ("OC") spray to gain control, handcuffed Plaintiff, and assisted in transporting him to the medical unit for aftercare. (*Id*.)

Marcinko's report corroborates that Plaintiff took a fighting stance, pulled away from Finn, and raised his left fist. (Boley Ex. M.) Marcinko helped direct Plaintiff to the ground and secured his left arm. (*Id*.) Because Plaintiff was spitting, Marcinko placed a transport hood over his head. (*Id*.) At that point, Plaintiff was transported to the doctor's examination room where he received treatment. (*Id*.) Marra's report notes the same sequence of events. When he arrived, he observed Plaintiff on the ground resisting the officers' control. (Boley Ex. O.) He then deployed an additional short burst of OC spray to Plaintiff's face and held his legs while the other officers secured Plaintiff. (*Id*.)

Boley, the area supervisor, says he arrived as the Code November was called. (Boley Ex. J.) He observed Plaintiff on the floor, refusing to comply and tucking his arms under his body. (*Id*.) Boley repeatedly ordered Plaintiff to stop resisting and observed officers place a transport hood over Plaintiff due to OC exposure and to prevent the transfer of bodily fluids. (*Id*.) Boley then saw Plaintiff escorted to the medical unit and the eye wash station. (*Id*.)

On June 18, 2020, Plaintiff filed his original complaint in this matter. (ECF No. 1.) Thereafter, Plaintiff filed several amended complaints, (ECF Nos. 3, 6, 24, 28, 50) to which Defendants filed answers. (ECF Nos. 16, 17, 25, 29, 32, 33, 51-55.)[5] Plaintiff brings four claims: (1) excessive force in violation of the Fourteenth Amendment (Count I); (2) excessive force in violation of the Fourth Amendment (Count II); (3) assault and battery (Count III); and (4) against

---

[5] Stemming from the Amended Complaints, Defendants Mark Cranston, Middlesex County Adult Correction Center, and Andrew C. Carey, were terminated from this matter. (ECF No. 4, 49.)

4

SGT Boyle only, supervisory liability for deprivation of constitutional rights (Count IV). (ECF No. 50.)

At the conclusion of discovery, on March 28, 2025, Defendants filed the instant motions for summary judgment. (ECF Nos. 130-133.) Although filed separately, Defendants all make the same general arguments: that they are entitled to summary judgment because there are no genuine issues of material fact that could establish their liability for Plaintiff's claims, and that they are entitled to qualified immunity and immunity under the New Jersey Tort Claims Act ("NJTCA"). *Id*. Additionally, Defendant Boley argues that supervisory liability cannot be imposed in a § 1983 claim based on a theory of *respondeat superior*. (ECF No. 131.) Plaintiff filed an Opposition, to which Defendants replied. (ECF Nos. 139-143.)

## II.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims based on federal law pursuant to 28 U.S.C. § 1331. It has supplemental jurisdiction over Plaintiff's claim under state law pursuant to 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). That is, the court must view all facts "in the light most favorable to the nonmoving party." *Turco v City of Englewood, New Jersey*, 935 F.3d 155, 161 (3d Cir. 2019).

**IV.    DISCUSSION**

Defendants argue they are entitled to summary judgment primarily because they were acting in good-faith and within their lawful authority to subdue Plaintiff. Plaintiff opposes, primarily arguing that Defendants deleted a video that showed Defendants used excessive force on Plaintiff.[6] (Opp. at 6.) On this basis, Plaintiff argues the Court should draw an adverse inference against Defendants and deny their motions for summary judgment. (*Id.* at 8.) In response, Defendants argue that Plaintiff's Opposition is procedurally improper because Plaintiff failed to cite to any evidence in the record, which render Defendants' statement of facts undisputed for purposes of summary judgment. (Reply, ECF No. 140.)[7] Accordingly, Defendants argue that, based on the undisputed facts, they are entitled to judgment as a matter of law. (Reply at 5.)

**A.    PROCEDURAL ARGUMENT**

The Court will start with Defendants' procedural argument first. Defendants assert they are entitled to summary judgment because Local Civil Rule 56.1 requires the opponent of a

---

[6] Based on the record before the Court, there is not enough to establish whether an adverse inference should be drawn against Defendants on summary judgment. Indeed, it is not clear whether or how Defendants would have had possession, custody, or control of the deleted video for the Court to hold them responsible. Nonetheless, further briefing and factual development will be required to determine whether an adverse inference should be drawn at trial.
[7] Defendants Marra, Marcinko, and Boyle filed letter motions adopting Defendant Finn's Reply. (ECF No. 139, 142, 143.)

6

summary judgment motion to file a responsive statement of material facts, and that an opponent's failure to do so renders the moving party's facts undisputed for purposes of summary judgment. (Reply at 2.)  Under that rule, the opponent must state "each material fact in dispute" and, as relevant here, "cit[e] to the affidavits and other documents" in support of that motion.  L. Civ. R. 56.1(a).  Any material fact not disputed, with the relevant citations, shall be deemed undisputed for purposes of summary judgment. *Id.*

Here, Plaintiff failed to cite any record evidence in his response to Defendants' motions for summary judgment.  As such, he has failed to comply with the District's Local Rules.  Nevertheless, the Court exercises its discretion to depart from Local Rule 56.1 and excuse the technical defects in Plaintiff's statements of facts given that—while far from perfect—they sufficiently narrowed the record such that the Court is able to adjudicate the Motion without the need for a factual scavenger hunt.  Moreover, Defendants have not relied on Local Rule 56.1 to their detriment in the sense that the merits of their defenses remain undisturbed.  *See Veverka v. Royal Caribbean Cruises Ltd.*, 649 F. App'x 162, 167 (3d Cir. 2016) (holding that, in the context of summary judgment, "district courts have substantial discretion to depart from their local rules 'where (1) [they] ha[ve] a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.'") (citation omitted); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (Holding, in the context of local rule for summary judgment, that "a district court's application and interpretation of its own local rules should generally be reviewed for abuse of discretion.")  There is also no prejudice to Defendants given that the Court has the authority to order a supplemental submission from Plaintiff's counsel to correct the error.  *See* Fed. R. Civ. P. 56(e)(1); *Lauria v. Lieb*, 152 F.4th 549, 552 (3d Cir. 2025) ("Courts possess discretion to allow litigants to address errors in their summary judgment

7

materials, including by allowing additional time for the resubmission of unsworn allegations in supplemental affidavits."). As a final point, the Federal Rules of Civil Procedure expressly permit the Court to consider any evidence in the record, even if that evidence is not cited to by a party. *See* Fed. R. Civ. P. 56(c)(3).

Plaintiff's deposition transcript, which is attached as Exhibit E to Finn's Motion for Summary Judgment, contains information that supports Plaintiff's Opposition and his Statement of Material Facts. The Court has the record before it and all parties are privy to that same record. For the reasons outlined above, Plaintiff's claims will not be barred because of his attorney's procedural error. Because Defendants' procedural argument fails, the Court will turn to the substance of their motions for summary judgment.

    **B.**    **SUBSTANTIVE ARGUMENTS**

Defendants argue their motions for summary judgment should be granted for several reasons, including that Plaintiff cannot support his claims on the undisputed evidence, and in the alternative, Defendants are entitled to both qualified immunity for the § 1983 claims and immunity under the Federal Torts Claims Act for Plaintiff's state-law claim. Because the analysis for whether Defendants are entitled to qualified immunity includes a determination of whether Plaintiff's constitutional rights were violated, the Court will start with Defendants qualified immunity argument.

    1.    <u>Qualified Immunity</u>

Qualified immunity shields police officers from liability unless they violated clearly established rights. To determine if an officer's conduct is entitled to qualified immunity, courts ask first, "whether the defendant's conduct violated a statutory or constitutional right," and second, "whether the right at issue was clearly established when the conduct took place." *White v. City of Vineland*, 500 F. Supp.3d 295, 304–05 (D.N.J. 2020) (*citing Sauers v. Borough of Nesquehoning*,

8

905 F.3d 711, 716 (3d Cir. 2018)). For a constitutional right to be clearly established, it "must be defined with a 'high degree of specificity.'" *Dennis v. City of Phila.*, 19 F.4th 279, 288 (3d Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "[C]ourts are 'not to define clearly established law at a high level of generality.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To accept too broad a version of the right at issue would "convert the rule of qualified immunity. . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A court is "thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." *Id.* (citation modified). The confines of a clearly established constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation modified). Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

Before turning to the question of whether Defendants are entitled to qualified immunity, the Court notes that much of their qualified immunity dispute in this case turns on which facts the Court is to credit. Defendants' argument is that under their version of events, Defendants acted reasonably under the Fourteenth and Fourth Amendment. Plaintiff, on the other hand, contends that Defendants used excessive force and beat him in response to his request for medical attention.

    2.    <u>Excessive Force Claims</u>

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Noble v. City of Camden*, 112 F.Supp.3d 208, 227 (D.N.J. 2015) (citation modified). "The use of

9

excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Id.* (citation modified). Reasonableness is an objective standard based on the totality of the circumstances, whereby a court must conduct an examination into the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation modified).

Here, Plaintiff testified that he was experiencing high blood pressure and required medical attention. (Plaintiff Dep. at 30:10–20.) According to Plaintiff, instead of Defendants getting him the medical treatment he required, they threw him to the ground and maced him multiple times. (*Id.* at 30:21–31:6.) After they restrained Plaintiff, Defendants also allegedly brought him to a backroom where he was called a racial slur, punched in the stomach, and waterboarded. (*Id.* at 31:13–32:8.)

Defendants' version of events is markedly different. They claim that Plaintiff refused to lock into his cell and shoved Finn. (Finn MSJ at 3.) Accordingly, Defendants argue that they used force "in a good-faith effort to maintain or restore discipline" after Plaintiff failed to lock into his cell. (*Id.* at 10.)

The contrasting accounts of what happened present factual issues as to the degree of force actually employed and its reasonableness. Given that the Court must view the facts in the light most favorable to Plaintiff, a reasonable jury could credit Plaintiff's testimony and find that Plaintiff was punched, maced, and waterboarded while he was restrained. Even if Plaintiff was refusing to enter his cell and resisting Defendants' control, there was no objective, rational basis for Defendants to push Plaintiff's head into the wall, punch him in the stomach, or waterboard him after he had already been restrained. Under these facts, Defendants' conduct was not "objectively

reasonable", and Plaintiff has satisfied the first prong of the qualified immunity analysis because the gratuitous use of force against an individual that has already been restrained violates the Fourth Amendment. *See Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding force excessive as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time force was used); *Robinson v. Andrews*, Civ. No. 11-252, 2014 WL 4662237, at *9 (D.N.J. Sept. 18, 2014) (denying summary judgment where officer kicked plaintiff after he was already subdued, handcuffed, and unable to pose any threat to the officer's safety).

The Court also finds that the second prong has been satisfied. At the time Defendants acted, the law was clear that beating and waterboarding an unarmed inmate who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force. *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.") Viewing the evidence in a light most favorable to Plaintiff, a reasonable officer could not have believed that beating an unarmed man that was restrained, slamming his head into the wall, and waterboarding him was lawful. It would have been clear to any officer that once Plaintiff was restrained, he no longer posed a risk of harm. Accordingly, the Court finds that Defendants are not entitled to qualified immunity.

Defendants separately seek summary judgment on the claim of excessive force, an argument the Court readily rejects. As discussed above, there is a material dispute as to whether Defendants used gratuitous force against Plaintiff. Insofar as a reasonable juror could credit Plaintiff's version of the facts and find that Defendants' conduct violated the Fourth Amendment,

11

summary judgment is not warranted. Plaintiff's excessive force claims (Count I and II) may proceed.[8]

### 3. Assault and Battery

Defendants next argue that they are entitled to summary judgment on Plaintiff's assault and battery claim (Count III) because: (1) Plaintiff cannot satisfy the statutory elements of assault under New Jersey law and (2) the New Jersey Tort Claims Act provides Defendants with immunity. Under New Jersey law, if a "police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery." *Hanson v. United States*, 712 F.Supp.2d 321, 330 (D.N.J. 2010). Whether the force used was excessive depends on the reasonableness of the force employed by the officer. *See id.*

For reasons already explained, there is a genuine dispute of material fact as to whether Defendants used excessive force. Plaintiff's deposition testimony suggests that Defendants used excessive force after Plaintiff was restrained. While there is evidence in the record to support Defendants' version of events, the Court must view the evidence in the light most favorable to Plaintiff.

Defendants second argument, that the New Jersey Tort Claims Act ("NJTCA") provides them with immunity, also fails. The NJTCA grants qualified immunity to "officials who act in good faith in the execution or enforcement of any law." *Gonzalez v. New Jersey Dep't of Children and Families*, 545 F.Supp.3d 178, 218 (D.N.J. 2021) (citation modified). Thus, an official will be immunized if he acts (a) with objective reasonableness; or (b) with subjective good faith. *See id*. "Under the objective reasonableness test, courts 'appl[y] the same standards of objective reasonableness that are used in federal civil rights cases' to analyze qualified immunity." *Id.*

---

[8] Defendants' arguments regarding Plaintiff's Due Process claim (Count I) fail for similar reasons.

(quoting *N.E. v. J.V. v. DYFS*, 449 N.J. Super. 379, 404 (App. Div. 2017)). As already explained, Defendants are not entitled to qualified immunity. The same analysis applies here.

The Court also finds that Defendants are not entitled to immunity under the alternative, "subjective good faith" test. Under that test, an official will have immunity so long as their "mental state falls short of that required for 'crime, actual fraud, actual malice, or willful misconduct.'" *Id.* at 219 (quoting *B.F. v. DYFS*, 296 N.J. Super. 372, 385 (App. Div. 1997)). Given that there is a genuine issue of material fact regarding whether Defendants used excessive force, the Court cannot determine as a matter of law whether the NJTCA shields Defendants from liability for their use of force. *See Mantz v. Chain*, 239 F.Supp.2d 486, 508 (D.N.J. 2002) (denying summary judgment on assault and battery claim against officer where a genuine material dispute of fact existed). Accordingly, Defendants are not entitled to summary judgment on Plaintiff's assault and battery claim either.

          4.     <u>Supervisory Liability</u>

Plaintiff also brings a claim against Boley for supervisory liability for deprivation of constitutional rights. (Am. Compl. ¶¶ 59–66.). Boley seeks to dismiss this claim, arguing that supervisory liability cannot be imposed under § 1983 on a theory of *respondeat superior*. (Boley MSJ at 8.)

It is well established that a plaintiff may not rely on the doctrine of *respondeat superior* to establish supervisory liability. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Rather, there are generally two ways of imposing supervisory liability under § 1983. First, liability can be established if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation modified). Second, a supervisor can be held liable "if he or she participated

13

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

Here, there is evidence in the record to suggest that Boley was not only present during the incident, but also that he participated in the use of excessive force against Plaintiff. As has been discussed, there is a genuine issue of material fact as to whether Defendants used excessive force. If, as Plaintiff claims, Boley participated in or watched other officers use excessive force, he could be held liable under a theory of supervisory liability. Because the Court cannot conclude based on this record that there is no genuine issue of material fact concerning Boley's use of force, summary judgment is not warranted.

### V.     CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' Motions for Summary Judgment. An appropriate Order will follow.


Date: October 31, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
